COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-322-CV

 

 

JENNIFER FULMER                                                               APPELLANT

 

                                                   V.

 

JASON MICHAEL FULMER                                                       APPELLEE

 

                                              ------------

 

          FROM
COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








Appellant Jennifer Fulmer
appeals the final decree of divorce entered by the trial court.  In four issues, she argues that the trial
court abused its discretion by awarding Appellee Jason Michael Fulmer damages
for his intentional infliction of emotional distress claim and attorney=s fees because the evidence is legally and factually insufficient to
support those recoveries.  We will
reverse.

II.  Factual and Procedural Background

Jennifer and Jason married in
June 2002.  They were working for the
same employer when, on April 7, 2006, Jennifer filed her original petition for
divorce, alleging that the marriage had become insupportable because of discord
or conflict of personalities.








Jennifer filed an application
for a protective order and request for a temporary ex parte order about a month
later seeking to prohibit Jason from committing family violence as described in
section 71.004 of the family code; from communicating in any manner with her
except through her attorney; and from going to or near her residences,
employment, or business, among other things. 
She alleged in her supporting affidavit that she was requesting a protective
order because of Agreat fear
of what [Jason] will choose to inflict upon me due to his past threats of
violence and attempts of bodily injury.@ Specifically, she alleged, among other things, that between April 13,
2006, and May 2, 2006, Jason vandalized one of their vehicles; said they Awould be enemies at war and that he would feel like running me over in
his car, strangling me, [and] punching me@; and became angry while they were both at their residence, threw her
purse out the front door, kicked a chair that she was sitting in, yelled at her
with clinched teeth, and held up a stun gun and Asparked it inches from her face.@  The trial court granted the
temporary ex parte protective order.

Jason thereafter filed his
cross-petition for divorce, alleging as grounds for the divorce that the
marriage had become insupportable because of discord or conflict of
personalities and that Jennifer had committed adultery.  Jason further alleged a Asecond cause of action@ for intentional infliction of emotional distress, averring that
Jennifer Ahas
committed adultery, and as part of her adulterous plans, . . . has
made slanderous, false, and defamatory statements and accusations against
[him].  These acts were perpetrated in an
intentional and concerted effort to cause [him] to lose his job, his
reputation, and to cause him serious mental anguish and humiliation.@  He alleged that Jennifer Ahad begun an affair with a married co-worker,@ that she Aconcocted a
scheme to cause [him] to be fired so that he would not continue to work for the
same employer,@ and that
she Aknew that if [he] were fired he would have to move out of this City
and the State of Texas to find employment.@








At the hearing on the
protective order, Jennifer testified that Jason never physically harmed her,
that she never called the police to report most of the complained of conduct
set forth in her affidavit, and that she continued to associate with and call Jason
despite her alleged fear of him. 
Jennifer also admitted having sex with a co-worker.  The trial court denied Jennifer=s application for a protective order and dissolved the ex parte
protective order.     The final trial was
to the bench.  Jennifer testified about
her proposed distribution for the community estate and debt.  She also testified that she had sex with her
co-worker ten days after filing for divorce and again in the fall of 2006 and
that she was terminated from her employment after the trial court denied her
application for a protective order and lifted the temporary ex parte protective
order.  Jason submitted his proposed
property and debt distribution, which included on page four a section numbered
and titled, AVII.  Less Reimbursements Owed to Husband from
Wife.@  Under that heading, Jason
requested $10,000 for ACivil
Damages - Embarrassment and Humiliation,@ referencing his claim for intentional infliction of emotional
distress.  He also requested under that
section $6,000 for attorney=s fees.  Jason testified about
the AEmbarrassment and Humiliation@ that he experienced as a result of Jennifer=s filing her application for a protective order in addition to his
proposed distribution of the community estate and debt.








The trial court=s final decree of divorce states in part that the trial court Aadopts the PROPOSED PROPERTY AND DEBT DISTRIBUTION of [Jason],
attached hereto[,] and makes findings of fact consistent with the calculations
set forth by [Jason] in Paragraphs III, IV, V, VI, and VII of said document,@ which includes the AReimbursements@
section.  The trial court additionally
found that Jennifer Aowes certain
sums to [Jason] as shown on page 4 of the PROPOSED PROPERTY AND DEBT
DISTRIBUTION of [Jason]@ (the AReimbursements@ section)
and that it grants judgment against Jennifer and in favor of Jason in the amount
of $10,000.  Although the trial court
adopted Jason=s proposed
property and debt distribution, which included an award of $6,000 in attorney=s fees to Jason under section VII, it provided later in the decree
that Aeach party shall be responsible for his or her own attorney=s fees incurred as a result of legal representation in this case.@








The trial court entered
findings of fact and conclusions of law. 
It found in part that Jennifer Aintentionally and knowingly filed a false Application for Protective
Order and, as a result, [Jason] suffered embarrassment, humiliation, mental
pain and suffering[,] and injury to his reputation.@  The trial court later entered
an additional finding of fact that the affidavit filed by Jennifer in
conjunction with her application for a protective order was contradicted by her
testimony at the hearing on the protective order, that she had a motive to
either cause trouble for Jason or have him fired so that her relationship with
her co-worker could continue without any interference by Jason, that her
actions in this regard were intentional and done with the intent to cause harm
to Jason, that the actions caused harm to Jason, and that such actions were the
proximate cause of his damages.

Jennifer filed a motion for
new trial, arguing that the property division is unjust and that the evidence
is legally and factually insufficient to support Jason=s award for intentional infliction of emotional distress.  She now appeals.

III.  Intentional Infliction of Emotional Distress

In her second issue, Jennifer
argues that the trial court abused its discretion by Aruling in [Jason=s] favor on
his claim for Intentional Infliction of Emotional Distress@ because the evidence is legally and factually insufficient to support
the trial court=s findings
in support of that claim.[2]  Jennifer specifically attacks the sufficiency
of the evidence to support the elements of Jason=s intentional infliction of emotional distress claim requiring that
the defendant=s conduct be
extreme and outrageous and that the plaintiff suffer severe emotional distress.








A.     Standards of Review

Findings of fact entered in a
case tried to the court have the same force and dignity as a jury=s answers to jury questions.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court=s findings of fact are reviewable for legal and factual sufficiency of
the evidence to support them by the same standards that are applied in
reviewing evidence supporting a jury=s answer.  Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295,
297 (Tex. 1994).[3]








We may sustain a legal
sufficiency challenge only when (1) the record discloses a complete absence of
evidence of a vital fact; (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence establishes conclusively the opposite of a vital
fact.  Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S.
1040 (1999); Robert W. Calvert, ANo Evidence@ and AInsufficient
Evidence@ Points of
Error, 38 TEX. L. REV. 361, 362B63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable fact-finder could and
disregard evidence contrary to the finding unless a reasonable fact-finder
could not.  City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005).

When the evidence offered to
prove a vital fact is so weak as to do no more than create a mere surmise or
suspicion of its existence, the evidence is no more than a scintilla and, in
legal effect, is no evidence.  Kindred
v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983).  More than a scintilla of evidence exists if
the evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about the existence of a vital fact.  Rocor Int=l, Inc. v. Nat=l Union Fire Ins. Co., 77 S.W.3d
253, 262 (Tex. 2002).








AWhen a court
of appeals disturbs the judgment of a lower tribunal, merely saying that the
court has reviewed all the evidence and reaching a conclusion contrary to that
of the trier of fact is not enough. 
Instead, the court should explain, with specificity, why it has
substituted its judgment for that of the trial court.@  Citizens Nat=l Bank in Waxahachie v. Scott, 195 S.W.3d
94, 96 (Tex. 2006).

An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the answer should be set aside and a new trial ordered.  Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).

B.     Legally Insufficient
Evidence of Severe Emotional Distress  








Our supreme court adopted the
tort of intentional infliction of emotional distress in Twyman.  855 S.W.2d at 621B22.  To recover under this tort,
a plaintiff must prove the following: (1) the defendant acted intentionally or
recklessly; (2) the conduct was extreme and outrageous; (3) the defendant=s actions caused the plaintiff emotional distress; and (4) the
resulting emotional distress was severe. 
Morgan v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000); Twyman,
855 S.W.2d at 621; Gonzales v. Willis, 995 S.W.2d 729, 735 (Tex. App.CSan Antonio 1999, no pet.).  The
requirement that the emotional distress be Asevere@ means that
the distress is so severe that no reasonable person could be expected to endure
it without undergoing unreasonable suffering. 
GTE Sw., Inc. v. Bruce, 998 S.W.2d 605, 618 (Tex. 1999); Clayton
v. Wisener, 190 S.W.3d 685, 695 (Tex. App.CTyler 2005, pet. denied); Escalante v. Koerner, 28 S.W.3d 641,
646 (Tex. App.CCorpus
Christi 2000, pet. denied).  While
emotional distress includes all highly unpleasant mental reactions such as
humiliation, embarrassment, anger, worry, and disappointment, any party seeking
recovery for mental anguish, even when advancing a cause of action that does
not require the Asevere@ damages required for intentional infliction of emotional distress,
must prove more than mere worry, anxiety, vexation, embarrassment, or anger.  Bruce, 998 S.W.2d at 618; Gonzales,
995 S.W.2d at 736; see also Parkway Co. v. Woodruff, 901 S.W.2d
434, 444 (Tex. 1995).  Indeed, feelings
of anger, depression, and humiliation are not sufficient to establish severe
emotional distress.  Gonzales,
995 S.W.2d at 736.  And conduct is not
actionable as intentional infliction of emotional distress merely because it
may damage the plaintiff=s
reputation.  Id. at 736B37.  But proof of a physical
manifestation of the emotional distress is not required.  Gorges Foodservice, Inc. v. Huerta,
964 S.W.2d 656, 668 (Tex. App.CCorpus Christi 1997, pet. withdrawn).








Caselaw examining the severity
requirement is helpful in conducting an analysis of whether a litigant has made
a showing that the distress he or she suffered is so severe that no reasonable
person could be expected to endure it without undergoing unreasonable
suffering.  In Bruce, the supreme
court held that the evidence was legally sufficient to support the jury=s finding that the appellees suffered severe emotional distress,
reasoning as follows:

The
employees testified that, as a result of being exposed to Shield=s
outrageous conduct, they experienced a variety of emotional problems, including
crying spells, emotional outbursts, nausea, stomach disorders, headaches,
difficulty in sleeping and eating, stress, anxiety, and depression.  The employees testified that they experienced
anxiety and fear because of Shield=s continuing harassment,
especially his charges and rages.  Each
employee sought medical treatment for these problems, and all three plaintiffs
were prescribed medication to alleviate the problems.  An expert witness testified that each of them
suffered from post-traumatic stress disorder.

 

Bruce, 998
S.W.2d at 618B19.  In Clayton, evidence that the appellee
Aexperienced a significant degree of clinical depression and anxiety,
which channeled into somatic symptoms such as headaches, gastrointestinal
difficulties, sleep disturbances, weakness, or fatigue,@ was held to be legally sufficient evidence to support the jury=s finding that the appellant caused the appellee to suffer severe
emotional distress.  Clayton, 190
S.W.3d at 696.  And in Behringer v.
Behringer, evidence that the appellee feared for his life, slept with a
pistol, cried in public, and lost his appetite supported the trial court=s finding that he suffered severe emotional distress.  884 S.W.2d 839, 844B45 (Tex. App.CFort Worth
1994, writ denied).








In this case, Jason testified
that the allegations made by Jennifer in her application for a protective order
were false; that he was not allowed to go to work for almost a week and that he
was not allowed to get within two miles of the building where he worked after
the trial court signed the ex parte protective order; that he could not come
within ten feet of Jennifer when he was allowed to return to work; and that his
boss threatened to fire him if the protective order was not released.  After the trial court denied Jennifer=s application for the protective order, it was a Acivil war@ at work
because about half of the employees believed Jason and half believed Jennifer,
he was reprimanded for calling another female employee, and he found his place
of employment to be an Aunsuitable
work environment,@ in part
because he was Afrowned upon@ and people were Atalking about [him].@  Jason was in line to be
promoted but that Aflew out the
window with [the] protective order.@ According to Jason, he eventually sought employment elsewhere due to
the Aunacceptable@ working
conditions he had to endure.  Jason
testified that, Apersonally,@ Aeverybody@ thought he was a Awife beater.@  After the trial court signed the ex parte
protective order, he had to move out of his house and stay in a hotel.  Jason confirmed that he was asking the trial
court to award him $10,000 for the Apotentially slanderous acts of [Jennifer].@













Unlike the legally sufficient
evidence of severe distress produced by the plaintiffs in Bruce, Clayton,
and Behringer, none of the evidence here describes, explains, or details
any severe emotional distress that Jason personally suffered as a result of
Jennifer=s intentional or reckless extreme and outrageous conduct.  See Bruce, 998 S.W.2d at 618B19; Clayton, 190 S.W.3d at 696; Behringer, 884 S.W.2d at
844.  Rather, all of the relevant
evidence describes some event or conditionCeither at Jason=s place of
employment or residenceCthat
occurred as a result of Jennifer filing her application for a protective
order.  To the extent Jason argues that
any feelings of anger, humiliation, or embarrassment experienced by him can be
implied by this evidence, such distress is insufficient in and of itself to
establish severe emotional distress.  See
Gonzales, 995 S.W.2d at 736.  Consequently,
the record discloses a complete absence of evidence, or at most no more than a
scintilla of evidence, that Jason experienced distress so severe that no
reasonable person could be expected to endure it without undergoing
unreasonable suffering.  See Bruce,
998 S.W.2d at 618.  Accordingly, the
evidence is legally insufficient to establish severe emotional distress.  See, e.g., Gonzales, 995 S.W.2d
at 737 (holding evidence that appellee felt embarrassed, uncomfortable, hurt,
and dirty insufficient to establish severe emotional distress); Huerta,
964 S.W.2d at 668B69 (holding
evidence that plaintiff=s wife
temporarily ejected him from house, that his relationship with his wife
suffered, that he was unable to concentrate, that he felt insecure about his
prospects for finding employment, and that he was embarrassed legally
insufficient evidence of severe emotional distress).  We sustain Jennifer=s second issue.

IV.  Attorney=s Fees

In her third issue, Jennifer
argues that the trial court abused its discretion by Aawarding reimbursement to [Jason] for attorney=s fees incurred by him during the case@ because there was insufficient evidence to support the award.  Jason Aconfesses error on this point and agrees that the award of attorney[>]s fees should be stricken from the trial court=s judgment.@

A court may apportion
attorney=s fees in a divorce action as part of a just and right division of
property.  Vazquez v. Vazquez, No.
14-05-001257-CV, 2007 WL 1745324, at *5 (Tex. App.CHouston [14th Dist.] June 19, 2007, no pet.); Sandone v.
Miller-Sandone, 116 S.W.3d 204, 208 (Tex. App.CEl Paso 2003, no pet.).  As a
general rule, the party seeking to recover attorney=s fees carries the burden of proof. 
Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex.
1991).  The reasonableness of the fee is
a question of fact that must be supported by evidence.  Sandone, 116 S.W.3d at 208.








Here, the divorce decree
provides that each party is responsible for his or her own attorney=s fees, but it also expressly adopted Jason=s proposed distribution, which provides that Jason is entitled to
$6,000 for attorney=s fees.  To the extent the decree awards Jason any
attorney=s fees, there is no evidence regarding the amount of time spent by
Jason=s attorney to prepare for the case, the hourly rate charged by Jason=s attorney, or the reasonableness and necessity of the fees charged by
Jason=s attorney.  The only evidence
relating to attorney=s fees was
Jason=s testimony that he paid his attorney $2,500 to represent him in the
application for a protective order matter and $3,500 to represent him in the
divorce.  In the absence of evidence
demonstrating the reasonableness and necessity of the fees, the trial court
abused its discretion by awarding Jason $6,000 in attorney=s fees.  See Vazquez,
2007 WL 1745324, at *5 (holding that trial court abused its discretion by
awarding attorney=s fees
because party presented no evidence of attorney=s fees); see also Lewis v. Lewis, No. 01-98-00354-CV, 1999 WL
442176, at *1 (Tex. App.CHouston [1st
Dist.] July 1, 1999, no pet.) (holding that trial court erred by awarding
attorney=s fees because party presented no evidence that fees were the usual,
customary, and reasonable charge for attorney=s fees in divorce case). 
Accordingly, we sustain Jennifer=s third issue.

We do not reach Jennifer=s fourth issue because it is contingent on a determination by us that
the evidence is sufficient to support the intentional infliction of emotional
distress award, which we have not determined. 
See Tex. R. App. P.
47.1.  And Jennifer only sets forth the
standards of review in her first issue; she requests no relief.








V.  Conclusion

Having sustained Jennifer=s second issue, we reverse that portion of the divorce decree awarding
Jason $10,000 for his intentional infliction of emotional distress claim and
render judgment that Jason take nothing on that claim.  Having sustained Jennifer=s third issue, we reverse that portion of the divorce decree awarding
Jason $6,000 for attorney=s fees.  We affirm the remainder of the judgment.

 

PER CURIAM

PANEL F: 
HOLMAN, DAUPHINOT, and GARDNER, JJ.

DELIVERED: 
July 10, 2008











[1]See Tex. R. App. P. 47.4.





[2]Because
the trial court=s
ruling on Jason=s
tort claim is separate from the trial court=s property division, the
appropriate standard of review is legal and factual sufficiency of the
evidence, not abuse of discretion.  See
Tex. Fam. Code Ann. ' 7.001
(Vernon 2006) (providing for trial court discretion only in division of marital
estate); Twyman v. Twyman, 855 S.W.2d 619, 625 (Tex. 1993) (holding
that, to avoid double recovery, trial court may not base division of marital
property and award of tort damages on same tortious conduct); Burger v.
Burger, 02-05-00170-CV, 2006 WL 495663, at *4 (Tex. App.CFort
Worth Mar. 2, 2006, no pet.) (mem. op.).





[3]Jennifer
challenges the trial court=s findings that she Aintentionally
and knowingly filed a false Application for Protective Order and, as a result,
[Jason] suffered embarrassment, humiliation, mental pain and suffering[,] and
injury to his reputation@ and
that she Aintentionally
made false statements regarding [Jason] that were reasonably likely to cause
injury to him and which did cause injury to him.@  As mentioned above, Jason pleaded a claim for
intentional infliction of emotional distress, and the trial court awarded him
$10,000 for that claim.  To the extent
these challenged findings are incomplete or do not sufficiently reflect the
trial court=s
award for intentional infliction of emotional distress, we will imply such
findings.  See Pharo v. Chambers
County, Tex., 922 S.W.2d 945, 948 (Tex. 1996) (holding that trial court=s
judgment implies all findings of fact necessary to support it when no findings
of fact or conclusions of law are filed).